Court is reconvened. This is 4090904, the People v. Thomas Gilliam. We have for the appellant, Anastasia Brooks, and for the appellee, Michael Delcomen. May I please the court and counsel? My name is Anastasia Brooks and I represent the People in this case. Before I begin, I wanted to let the court know that opposing counsel has informed me that he has found an additional case to cite. While I have no objection to him filing a motion to cite supplemental authority, I did want, however, to take an opportunity to discuss the case in oral argument. So I felt that it would be better, perhaps, to have that opportunity now rather than wait for, for example, a response afterward. Counsel has copies. Yes, please. Counsel, could you give me those? We'll show the motion granted with no objection. Thank you, your honors. And that case, for the record, is the People v. Brett Ray, a 2002 case. And I received a copy as well and looked over it prior to the argument. I'll try to work in some points as I go along in order to distinguish that opinion. I wanted to clarify that the issue right here is the objective reasonableness and a reasonable suspicion for a tariff stop. The propriety of the initial detention is what is being challenged in the trial court and the status of taking an appeal from an adverse ruling. The issue is to be reviewed de novo and this court must consider the totality of the circumstances. And as the trial court emphasized that what the defendant had done prior to the stop was considered innocent in the trial court's view, the authority says, however, it's the degree of suspicion that attaches to acts that may be non-criminal in nature. And when considered in combination, the totality of the circumstances, a series of even non-criminal acts may become suspicious enough to meet the tariff standard. And I was prepared here to distinguish the cases cited in the defendant's brief, the Fox, Cordero, and Kipfer cases, as being plainly distinguishable on the grounds that it is much less suspicious and much more consistent with innocent behavior for a defendant to merely leave a scene, for example, upon citing police or to walk the other direction, for example, rather than what we have here, which is actually something that's a lot more evasive, which is the defendant stopping. For example, going out of his way. So in other words, when the cases make the distinction that activity can be consistent with merely going about one's business to avoid being stopped by police, here what the defendant did is the antithesis of going on his own way, stopping in two separate private driveways. So, of course, now the defendant has cited Ray, which is slightly closer in a factual sense, but still distinguishable, as I'll explain. But what I wanted to clarify, though, that the state's cited cases are going to still be relied upon in this court as persuasive authority, even though they are from outside of Illinois. That doesn't mean they're entitled to no weight. They should be considered as persuasive. So if the defendant has not cited any cases that are remotely on point, then, of course, this court should follow the persuasive authority cited in the state's brief. I'd like to talk about Ray briefly. Can I ask a question? I'm sorry. To be evasive, don't we have to have some evidence that this defendant saw the police car? No, because the test is objective, and so if the police can infer from the defendant's conduct that he had seen the police officer, then in the objective circumstances from the perspective of the officer, that inference can be drawn. We don't have to have proof that the defendant, for example, in fact saw the police officer. So in this case, he's coming up from behind within a mile, presumably at highway speeds, within a minute or so. He's very quickly turning off onto a private drive. Stops, waits, comes back on the road, goes in the same direction. Now the officer then has gone forward with his lights off, waiting for the defendant to come by again. And so once the defendant passes the second time, at that point, there can be no mistake with respect to whether he's seen the officer because now the officer comes back and follows him again from the side of the road. So it seems that the officer could quite easily make that reasonable inference from the facts that he, in fact, was identified by the defendant as a police officer. Actual proof thereof is not a requirement for an objective test in these circumstances. Is the standard the same in this case as it is on the petition to rescind standard of review? Petition to rescind on the basis of an improper stop, essentially, which I've argued in the companion case, is not a proper basis for a petition to rescind. But notwithstanding, if the issue is identical, then the standard of the appellate review of de novo with respect to reasonable suspicion should be the same. But isn't it actually a two-fold test when reviewing this matter? We give great deference to the trial court's factual findings and credibility determinations and reverse those conclusions only if against the manifest way of the evidence. And then after reviewing the factual findings, we review de novo. You reviewed de novo the crucial issue here, which is the legal issue, which is reasonable suspicion. But you're correct about the fact that factual findings generally give deference, except for this case is an undisputed case on the facts. There was no contrary testimony from the defense.  On the point about believing that the officer thought the defendant was lost, now my point was that if the undisputed facts show that an objective belief was reasonable about being lost or committing a crime, then the issue of the credibility of the officer is not important because what the officer said is undisputed and has to be accepted because there's no contrary testimony in the record. So if the officer, and the officer accepted the officer's, I'm sorry, the trial court accepted the officer's version of the facts because the trial court made the remarks about the defendant pulling off and coming back on the road and pulling off again and then characterized this as trying not to be followed  Well, this court doesn't have to be bound by one... Is it your argument that the officer's state of mind is irrelevant? For this issue, that's correct. State of mind, subjective state of mind is irrelevant because what the officer observed is undisputed and those facts support the articulable facts, support the inference of suspicion necessary for Terry. So it doesn't matter why an officer pulls someone over as far as that officer's state of mind. It's just whether a reasonable person objectively would say there was some suspicion here and the officer could indeed say, I'm going to find a way to pull this car over because I just want to check it out. That really doesn't make any difference. As long as the stop is lawful, it is not improper for officers to set subjective motives. But the officer's excuse of suspicion and evasiveness was clearly rejected by this trial court. Well, what the trial court did was relied on the fact that this defendant has a right, essentially, to not be followed by police and saying that, well, what he did is innocent and therefore is not reasonable suspicion. That's a legal judgment. That can be reviewed by this court de novo. What the trial court said happened is the defendant pulling off twice. Now, what we're arguing about on appeal is the legal effect of what the undisputed facts or what the defendant did. Pulling off twice, extinguishing his lights after the first time. So the inferences are this is not his driveway. He may be lost or he may be trying to evade police. But either way, as the prosecutor said below, the stop is justified. So in those circumstances, just because the trial court commented on the officer's credibility with respect to, she said, I didn't buy that when the prosecutor said that the officer talked about thinking that they were lost.  Or whether the trial court believes what the officer said he thought is what is the effect, the implication of the undisputed facts as what actually happened that night. So I wanted to refer to also Professor Lefebvre's tests for essentially the concept. So you'll concede that the defendant's actions objectively could have been a result of his being lost. It's one of the inferences the officer could have drawn under the facts, but that doesn't necessarily mean, because even innocent conduct under ARVISU is not going to negate reasonable suspicion of criminal activity. So therefore, if there is a possibility of reasonable inference that he was lost, and a reasonable inference that he was committing some crime, that's not going to negate each other. It's not like, well, he's got two justifications, now they subtract each other out, and now he has none. That's not the case. The standard is preponderance of the evidence? Preponderance of... What is the burden on the... Oh, a community caretaking exception. Is that your question? No, no. What is the trial court's... What standard is the trial court applying below? With respect to reasonable suspicion, the test is Terry, which is reasonable suspicion. I'm not sure... You have to prove it by what degree of evidence? Well, reasonable suspicion is a level less than probable cause, but more than a hunch, and that's basically all the courts have said in terms of guidance of what it means. I think she's asking, is it preponderance of the evidence, clear and convincing evidence, beyond a reasonable doubt? Oh, okay. Well, with respect to... Well, this is the defendant's motion to suppress, so the defendant actually has the burden of proof in the trial court. The state, to show that the stop is unlawful, that's the defendant's burden. And has to prove it by what degree of evidence? That, I'm not sure. I'm not sure, but the state's going to be penalized by the burden of proof here, because the state doesn't have the burden of proof. So when it's preponderance or something greater, it's not... Well, if you have two potential outcomes here, lost or criminal activity, doesn't the defendant have a burden of proof? And if he's established it can't be lost, is that enough? No, because I said, our visual says that even innocent conduct, which being lost is innocent, is not going to negate reasonable suspicion. So the defendant can't knock out reasonable suspicion by saying he was lost, because then the state has the community caretaking argument. So the defendant can't play both of the state's theories of possibilities, both of which on their own justify the stop, and say that now they have no justification, because we have two competing theories. They're not competing theories, necessarily. It's an odd situation here, where the trial court has clearly rejected this police officer's reasons, and yet we're back here saying, well, which is it, lost or criminal activity? And we're supposed to make that determination with evidence that's tainted by an incredible witness. Well, the trial court did not specifically say that he or she rejected the entire testimony of the witness, because the trial court's citing what actually happened, and the only thing we know about what happened before at least the police camera came on, which was that the stop was being made, is the testimony of the officer. So the trial court is accepting that part of the testimony, because the trial court cites that in the findings of pulling over and coming back out and pulling over again. And the only way we know that is from the officer. So the trial court's statement of facts here is not rejecting the entirety of what happened. It's just that the trial court seems to have a problem thinking, well, that the officer must have thought that they were lost. So, I mean, it's like they're talking about this bulletin about burglaries in the area, the days, et cetera. The question is essentially, in the trial court's mind, is he or she may have had trouble accepting everything the officer said. Some of it might have seemed like sort of like an after-the-fact justification to the trial court. But that doesn't negate the trial court's views of what actually happened and what this court can consider the legal consequences, the legal justifications for the stop, based on the undisputed facts of what happened. Counsel, the trial court said the police cannot just follow people waiting for an excuse to pull them over. Is that the law or is that just musings by the trial court? I'm not aware of any law, although I don't know if I remember seeing a case somewhere where if you're like following somebody for 30 minutes, waiting for them to commit a crime, is that a violation of due process to sort of like focus your efforts so heavily on somebody? But even if that were the case, even if there were a law on point that says, you know, the guy goes 10 miles and turns 15 times and the officer just, you know, you just can't shake him and you just wait for him to commit some sort of infraction, that's not anywhere near the case here because the officer's coming right up behind him with very quickly he turns off the road and again he turns off again. So it's like there's no opportunity for him just to drive lawfully for a while or, you know, 10 minutes or 10 miles and say, well, I've had enough. I think I want to turn on this road and see if the officer follows me, and then he does. And now what do I do? It's like a situation where the defendant was desperate not to avoid any proximity to the police. Well, how unusual is that? I mean, you're driving down the road and you notice in your rear view mirror that a police car is following you. Is it that unusual to maybe turn off and see if you can see if, I mean, you're wondering, is he interested in me? What have I done wrong? So you turn off and if he goes on, you're fine. And if he doesn't go off, then you know you've got a problem. Well, he could have slowed down instead and just see, well, if the officer's going to go around him and see what he does, just continue driving lawfully, going about his own business. But what he does here is evasive because not only does he turn off onto a private drive instead of just some other highway or an exit like in Gray, the case that the defendant wants to cite, it's a situation here where he not only turns off the road into a private drive, which he has no business being at, he also extinguishes his lights, which there's a statute talking about fleeing and eluding police, and extinguishing the lights is one of those things that's mentioned as being evasive conduct. So that's an additional factor when Professor LaFave talks about police avoidance. Objectively, when an individual in the country pulls into a driveway where the lights are all off, if I were going home to my family and the lights were all off, I'd turn my lights off in my driveway. How is that suspicious activity? Because the other factors here are not just the nature of the road being a private drive and the abruptness of the turn and the fact that the police wait and see what he does and the fact that he turns off into a second private driveway means that that first driveway wasn't his house. So the police, they wait and investigate and obtain more facts before acting. But the other thing is also that the house is dark. It doesn't pull all the way in the drive like in some of the other cases. So are you saying this is innocent and this is a community caretaking, this is evidence of loss, or it's evidence of criminal activity? The officer could draw either one as a reasonable inference. Did you argue this at the trial court, community caretaking? Didn't use the label. Defendant says that's not enough to preserve it because those words have to be used as a defendant's position. I can't find authority that says that has to be done. This court's precedent is focused on does the trial court have an opportunity to rule on the issue, and that's what I cited, I think it was on 66, from the record, was that he talked about he, Terry Lockwood, the prosecutor, I'm sorry, what are the deputies saying? Well, it's somebody who is committing criminal activity. They are out there and they are looking for houses to hit or they are lost. Either one of the officers has a legitimate basis. Does it say or they are lost or and they are lost? Or they are lost. Either one of the officers has a legitimate basis to make the contact, that's the issue here. So the trial court has the opportunity to rule on it, and the trial court did rule on it, said that she didn't, or he or she, I'm sorry, the judge, she didn't believe, but that's not the point. The point is whether the officer really thought that. The trial court might disbelieve that, but the question is, under the facts, those facts are undisputed and that does support, undisputed facts support a reasonable inference that they were in fact lost. Given the direction, the time of night, where the vehicle was registered out of, another fact the officer knew from the license plate check, and the direction they were traveling, and what they called goofy movement of the vehicle. So, I mean, those things does support a reasonable inference. So I wanted to distinguish the roadblock case from the Wray. That was not a unanimous opinion. The concurring opinion... Does that matter? No, but it does here because the concurring opinion, well the only justification there was the fact that they exited off an interstate highway. Again, different nature of the road, et cetera, and when the concurring opinion talks about legitimate reasons why someone might take an exit, merely just going one, trying to continue travel to avoid a phantom roadblock. Here, he's just trying to avoid any police proximity. There's no like sure roadblock coming up. So this is actually a stronger case than the roadblock cases because there if the defendant avoids a roadblock, he says, I know I'm going to get stopped at a roadblock, so I want to try to avoid that. I don't want to be hassled at a roadblock. Here he just wants to get away from police as fast and as quickly, and is desperate to do so no matter what. Inconvenience, sitting in somebody's private drive until the cop goes away, it doesn't matter. He doesn't care about going on his way. The only thing he cares about is avoiding this police officer. When the officer first started following, did the defendant take the very first turn available or did the defendant pass up other options to turn? Well, it's not clear because it was within a mile according to the testimony. I'm not sure if there was no saying he passed three turns and then he turned, and the question becomes also when did he in fact notice that he was being followed by a police officer and did he take the first turn? That's not entirely clear, but it is, I believe, more clear the second turn after he passes the officer who has stopped waiting ahead from him. So essentially the Wray case talked about how the turning off I'm sorry, my time is expired. We'll have more time on that. Thank you. Thank you. Mr. Duclon? Thank you, Your Honor. What's the difference between trying not to be followed by the police and evading the police? Well, there can be a fine line, but there could be a I mean, I think all of this evasive conduct you put on the spectrum. You see the police officer and you turn and you sprint the other direction, that's going to be evading the police. If the police officer is behind you and you take a right and a right and a right and a right, are you evading or are you just trying not to be followed? I mean, I think That's what I'm asking. My argument is that you're just trying not to be followed, and I think there is a distinction. Because if there isn't, I mean, I think there has to be a distinction because otherwise you don't have a right to not be followed by the police and to go about your business if when you attempt to do that Do you have a right not to be followed by the police? Well, you have a right to be, I misspoke, you have a right to go on your own way and to be free from police interference. Now, it's not a seizure if the police are following you, but I don't think there's anything wrong with circling around a block or taking a turn into a driveway, letting the police car follow you. Although, in this case, we don't even know if the defendant knew that it was a police car. But assuming, for the sake of argument, that he did know it was a police car and he turns in the driveway to let the officer go past, maybe he was doing the officer a favor. I mean, I don't see why, if you take an action that, if we can at least, let's say, agree that means that he doesn't want to be followed, that doesn't ergo mean that it's evasive conduct. Because you can turn and walk away from the police. Like I pointed to a case where a man walks up from behind a dumpster, Kipfer. The officer is suspicious of the man who walks up from behind the dumpster. They've had trouble at this apartment complex before. He orders the man to come back. The man ignores him and just continues to walk on his way. Is he being evasive by avoiding the officer, by going the opposite direction? Even though that's not what happened in this case. Maybe, but then again, he just doesn't want to be bothered by the police. And I think there has to be a line in there somewhere. I don't know that I can give you that. I don't know that it's a bright line, but I think there has to be a line. Otherwise, everyone that takes a turn when there's an officer behind them automatically has a strike of reasonable suspicion against him or her. And I don't think that can be the state of the law, because the courts have been clear in saying that you're always free to... But the officer didn't take any action when the defendant first turned and turned into the first driveway. The officer went on his way and parked his vehicle. And then it was only after the same vehicle that he had just seen going to the driveway that he then turned on his headlights, as I understood. Is that right? Who turned on his headlights? The officer, because his lights had been off. Well, the officer turned off his headlights when he pulled off the road. Right. And then when he saw the car go by, he turned on his headlights, the officer. Yeah, I agree. And then the defendant again takes a turn into a private driveway. Correct. You don't think there's anything a little bit suspicious about that? There might be, but I don't think it rises to the level that the officer's entitled to pull in behind him and effectuate a seizure. Isn't all that is required is reasonable suspicion? Yes. What would be unreasonable about suspecting that something was amiss with that kind of conduct? Because it has to be a particularized reasonable suspicion. Articulable and particularized is how the courts have said that. What that means is they have to say, what's the conduct and what crime am I inferring that this guy is committing by, in this case, by pulling into these two driveways? And arguably, it's more likely that the guy was lost with this behavior than he was committing a criminal act because the officer says, well, we have this general report that burglaries have been increasing in the entire county during the day and during the night. That's not particularized at all. He says, well, it's possible that they were going to be parked and partying, kids parking out in the country and partying. And I'm supporting that with this document that has this extra patrol request that I have. Well, it turns out that extra patrol request was from two miles away and it wasn't near a house. So you're getting closer to being particularized, but it's still not a particularized suspicion. So suspicious conduct itself is not enough? It has to be suspicious conduct which would leave an objective person to think perhaps there's crime afoot? Is that what you're saying? Yes, and it has to be particularized to the defendant and what the defendant is doing. Because if we just say that in Sangamon County, burglaries have been increasing in the last year, everyone driving around has that strike against them as far as reasonable suspicion. That's not particularized to an individual driver. So do you see what I mean about trying to make the distinction between something that can apply to a broad group of people and some suspicion that's particularized to that defendant and specifically what that person did that led the officer to believe that he was committing a criminal act? I mean, I don't think the law says that you have to say with specificity what the, you know, but the cases do say particularized and articulable. So it has to be, they have to give, you know, here is articulable was he turning these two drivers. Well, what does that mean he's doing? It's just as likely that he doesn't want to be followed. Okay, but your brief says that if he had done this ten times, that would have been enough. Well, I suggest that you're getting a lot closer. How does that particularize the suspicion? Whether it happened ten times, three times, two times, or eight times? Well, I think just like you were mentioning, when he turns in the first time, the officer doesn't come in time. He waits until he does it a second time. The idea being that it becomes a little more suspicious when you do it two times in a row. I think if you do it then three times, four times, five times, you're getting a little bit closer. Again, if we're talking about a continuum, you're getting a little bit closer every time. But how does it particularize the suspicion as you've argued is required? Well, I think the way Terry describes it is by saying, what can be seen as innocent conduct becomes much less so when it's repeated over and over again. Just like the defendants in Terry, they went and they looked in the shop front window, came back and talked, and the next one went down, looked in the window, came back and talked. We have our two times. Maybe they're discussing a Valentine's Day present to buy for their wives. Once they've done that 12 times, that's really uncommon. So what can be done two times, and might be reasonable, is getting a lot closer to being unreasonable at 12 times. Now, again, I don't want to draw a line and say, here's a certain number. There's no right line. It depends on the facts of the case. But otherwise, innocent conduct can look less so when it's repeated. I mean, it's more likely, let's say he didn't see that there was an officer, and the officer managed to stay secreted on the side of the road, and the defendant pulls in and it looks like they're looking around. Maybe it becomes more likely that they are looking for residents to burglarize. I mean, that's a possibility. When you've done it 12 times, two times you're lost. You're not going to pull in 12 times if you're lost. You're going to figure out where you're going the first time, or the second time, and decide what to do from there. So as far as credibility goes, as this court noted, the trial court just didn't believe the officer. And I think that that has to play a factor in these cases in general, and in this case in particular. Because we have a standard of review that says we give great deference to the trial court's factual findings. Factual findings are based on the testimony, in large part in these cases, of the officer. So if we're going to throw that out and just say, well, here are the officer's reasons. Who cares if he wasn't telling the truth or not? And we'll let another court decide at de novo if there's a reason out of this potpourri of reasons. I don't think that can be the state of the law. Now, I don't disagree. What is your verdict of proof at the trial court? I actually don't know the answer to that either. I'm sorry. I'd be happy to file a supplemental brief. What I can, I think, say comfortably is even if it was beyond a reasonable doubt, they met it in this case. So I don't know that that would impact the outcome. But again, I think the believability has to play a part in here. Because otherwise, why is the trial court sitting there saying, I don't believe the officer? I think he's making up reasons after the fact to pull this guy over. Then what's the case law that says you can't operate on a hunch? If the trial court says, after listening to the testimony, I believe the officer's not telling the truth and he was operating on a hunch, if we can't take at all any of these factual findings into consideration. One of the counsels argued it doesn't matter if he's operating on a hunch if objectively there was suspicious conduct. In some cases, that can be true. But in this case, under these facts, that's not true because there was no particularized suspicion. And that's why I think it's an interesting question. And again, with all Fourth Amendment, there's not a bright line that can be drawn. But there has to be a place for believability of the officer. Here, specifically, the trial court said, I think that he gives this extra patrol request, just as essentially an ex post facto, well, I can add this in as far as the reasons for the stop. That's not a particularized suspicion. I mean, I think that there has to be, and again, I can't tell this court exactly where I think the line should be drawn, but there needs to be a line in there somewhere. And I think this case certainly falls on the side to show this court that believability matters. And this is a good example of why. Well, isn't there a different issue between evading contact with the police and flight? Aren't the cases that have been cited by Ms. Brewer actually flight cases, which require more than merely pulling into a driveway twice? Well, I think I agree. I think that, like I was saying earlier, I think that this is on a continuum. And if we have headlong flight at the far end of the continuum, turning into a driveway is not even on the continuum. It's on the continuum, not wanting to be followed. You can get on, you know, if you see an officer, and you turn tail and walk the other way and jog a little bit, you're getting closer to evasion. So there are sort of steps along the continuum that we can take. And again, this is clearly not headlong flight. The state didn't argue that. Below the state's not arguing that. Now, it's obviously not headlong flight. Again, my argument is it's not even evasive conduct. It's not wanting to be followed, which I think there is a line that can be drawn there. But let's say, for the sake of argument, it was evasive conduct. There were no other factors that the trial court believed that the officer had, together with evasive conduct, to create a reasonable suspicion. How about pulling partway into the driveway and then turning the lights off? You mean as opposed to pulling all the way in? Yes. I don't think that – I don't see that that's a particularized suspicion of criminal conduct. I mean, the officer would probably say, well, I saw him pull all the way back. That led me to believe that he was going to burglarize the house. I mean, so it's sort of like either way there can be something on the other side of the coin. I don't think pulling partway in makes it more likely that he was engaged in criminal behavior, as opposed to pulling all the way in, since he went and pulled into the second driveway. Well, if you pull partway in, it seems like to me, objectively, you're kind of checking the place out. If you pull all the way in, you probably intend to go in because it's your house, or go up to the door and knock because you have friends inside or something like that. It's possible, but I think then the officer could also have said, they pull all the way in, they get out of the car, I better go up there and make sure they're not going to burglarize the place. I mean, I don't think pulling partway in is really objectively any more incriminating than pulling all the way in. Because he pulled back out and then went into the second. And I think that turning the lights off was probably a common courtesy, just as Myerscough mentioned. He probably didn't want to wake the people up in the house. I think that's a reasonable inference to be drawn from that. Because it wouldn't make any sense that he's trying to secrete himself from the officer if he knew that it was possible. Why didn't he turn them off when he pulled into the second house? Well, the officer came in right behind him, and I think he probably didn't think about it because he was being pulled over, essentially. I mean, he pulled into the second driveway and the officer pulled right in behind him. So it's not like he was sitting there for five minutes and then the officer thought, well, I better go look. The officer essentially pulled in right behind him. Again, if he knew that it was a police officer and he's turning into the driveway, him turning off the lights, what, he can't see me now that I turned my lights off? He's going to think that it's not like a... Was this a marked car with overhead lights? Yes, it was. That was in evidence? That was in evidence, yes. But I'd say, I don't know that we can even infer that he knew that it was an officer behind him because it was nighttime, and when a car comes up behind you, at least what I can see driving at night, are headlights. I can't see what kind of make, model, if they have lights, unless they activate the overhead lights, which he eventually did. Mr. Del Clement, have you had any contact with your client? No, I have not. Are you aware that in the petition to rescind appeal, that there is no counsel of record? I realize that it's a civil matter that your office does not handle. No, I was not aware of that. Do you understand under Tolandis that that's a forfeiture issue? Yes. I'd like to mention briefly community caretaking. As far as forfeiture goes, the state did bring it up at trial court, not saying community caretaking, but did mention being lost. There's no question about that. Arguably, that gave the trial court a chance to rule on it. But I'd say on the other side of that coin, at the motion to reconsider, the prosecutor affirmatively disavowed that argument, telling the trial court, it's not as if he was lost in looking for directions. That's on page 77 of the record. So it goes both ways. But ultimately, I don't know that it matters because community caretaking, according to the Supreme Court in Ludeman, is when the police act, when they're performing some task unrelated to the investigation of crime. Here, his main justification for pulling in behind the defendant was he suspected a crime. So you can't have it both ways in that, well, I suspected a crime, but I could have also been involved in community caretaking if I wasn't also investigating a crime. It has to be a completely separate, non-investigatory stop. Some of the examples are someone's driving down the street with a hat on their car. The officer pulls him over and says, hey, you forgot the hat on your car. He finds out the driver's drunk. He clearly wasn't investigating a criminal statute because having a hat on your car is not a violation of a criminal statute. Here, he says, I was suspicious because he pulled into two driveways. That takes it out of community caretaking. So regardless of whether it was forfeited or not, he wasn't engaged in community caretaking. What's your best case for that proposition of law that you can't argue them both? Well, Ludeman doesn't say that, but Ludeman, the quote from Ludeman is, searches or seizures are upheld under this doctrine when the police are, quote, performing some function other than investigating a violation of a criminal statute. So the court doesn't say exactly what I said, but I think that's a fair reading of that. You'll concede we have these cases all the time where both sides are arguing. Both of those arguments are argued. Yeah, but that doesn't mean that it's correct. There's a lot about this case that's groundbreaking. My argument to the court is that you can't have both. It's one or the other. And again, this is something where the officer's testimony comes in and the trial court said, I don't believe that he thought he was lost. Why do we have the trial court there to make factual findings if it's not to make findings exactly like that? So if the trial court said, yeah, I think you really thought that he was lost, you probably weren't investigating a criminal statute, the violation of a criminal statute, would that, I think the state would be arguing that that would be entitled to great deference on review, right? So I think that what the officer testifies to and what the trial court finds factually, especially as far as believability goes, does matter. And community caretaking is a good example when the court said, I don't believe it. But again, either way, my argument is, legally, you can't have it both ways. It's community caretaking or it's not. And I think that Ludeman makes that point. Hasn't this court made the point it could be either one? Well, I'm not going to say that there can't be factual situations in which... Well, I don't know how I want to respond to that because I think that... I can't say that there wouldn't be factual situations in which that couldn't be the case, but this is not that case. I don't think you get to pick and choose and say, I wasn't involved in the investigation of a criminal statute, but yet I had a particularized and articulable suspicion that this guy was engaged in criminal conduct. Just last, I'd like to point out, real quick, this distinction between not wanting to be followed versus evading the police. I assume it's Justice Myers-Coffin out with a no. Leland Grove, the village of Leland Grove, which is a village within the city limits of Springfield, have a proactive police force. And they frequently, they write a lot of tickets, but they also follow people frequently in and on the outskirts of that neighborhood. And I think it's safe to say that people find it annoying, and frequently people will go on their way and just continue to drive wherever they're going. But it wouldn't surprise me if people take the right, right, right, turn all the way around a block, just say, you know, don't follow me. If you're going to pull me over for something, pull me over for something, but don't follow me. And I think that that's a fair thing for drivers to do, and I think that's akin to someone walking away from an officer on the street. The officer says, hey, I want to talk to you. And the person says, I don't want to have anything to do with you. I'd like to walk away and terminate this encounter. That doesn't allow the police to say, now I've got a strike against you as far as reasonable suspicion of criminal conduct goes. If there are no further questions, thank you for your time. And I would ask that this court affirm. Thank you, Mr. Delcomen. Ms. Brooks? Let me ask you if the special concurrence is correct here in the Ray case. The state correctly points out that evasion by flight has been held to provide the degree of suspicion necessary to justify a Terry stop, cites DeWardlow. However, evasion by flight is something different from a citizen's decision to simply avoid an encounter with the police. The flight must be unambiguous in order to provide the articulable suspicion necessary to warrant a Terry stop in detention, cite People v. Thomas, 2001 Supreme Court case. Here, the act of leaving the interstate was replete with ambiguity. Even an admission that the interstate was exited for the express purpose of avoiding the announced drug checkpoint would not remove it from that ambiguity. Aren't we faced with the same ambiguity here? Well, any ambiguity that what happened was resolved by the time he left after the first turnout, and it turned again right away. And as the trial court said on page 79 of the record, this is a cat and mouse game. And if the mouse isn't trying to evade the cat, I don't know what to call it because, I mean, this is a defendant who's not just trying to be followed, as the trial court said. This is a defendant who is really trying to avoid being followed and going to such unusual and troubling lengths to avoid that contact by not just pulling off once but twice. Add on the extinguishing... Well, I also think it would be inappropriate if Justice Appleton is coming from a line-of-country club and the police officer is parked in the parking lot like he always is, and he goes toward his house. He lives two blocks away and realizes he's being followed, but he doesn't pull into his driveway. He turns the opposite direction and goes around the block, pulls in another driveway. The police officer passes, so he pulls back out, gets back on the road. The police officer is behind him again. He pulls in another driveway. Well, what happened here is what the officer said, is testified that this is unusual conduct. Not just unusual because he didn't pull in all the way in the drive, he extinguished his lights, and then leaves right away. Would it be any different if it were in town versus in the country? I'm not sure that makes any difference. The cases that are cited, like the Johnson case that's cited, it's almost on all fours because he turns off on the rural highway, turns around in the driveway, comes right back out, goes back on the same highway that he was on before, and so that's sort of a rural circumstance. So if a city makes any difference, I don't see how it makes the rural case less suspicious. So you're saying that the evasive action of pulling in a driveway twice equates to flight? Well, the Smith case was talking about a series of evasive maneuvers and the hiding. Hiding from extinguishing the lights and pulling in a private drive to avoid proximity to police, which is a series of evasive maneuvers, not just leaving a country road onto private driveways twice, but extinguishing the lights, that is equated with flight according to the U.S. v. Smith report. Now, it's not like headlong flight like Wardlow was talking about, just trying to get away from police as fast as possible no matter what. It's not headlong flight. What about People v. Thomas, the Illinois Supreme Court case? Are you familiar with that? I haven't had a chance to read that one recently, if ever. I'm not sure. But the question here is the timing of when he turns, how unusual it was, how desperate he was to get away from police, the extent of effort and inconvenience that he suffered in order to avoid the police proximity. So it's even stronger than the roadblock cases and even less ambiguous if the court was talking about what was the possible ambiguities in the situation. Whatever ambiguities existed had already been resolved by the time the officer waits ahead, waits for more information. Before you're out of time, I had extensive questions of opposing counsel about particularized suspicion. What is your view of how particular the suspicion must be? The facts are particular here because they're focusing on the defendant's particular conduct here, not just some bulletin that floats around about why you need to enforce burglaries. That's not particularized. What's particularized here is the officer's view of what this defendant is actually doing. It doesn't have to be particular. I cited Phil Kaufman Smith as some examples in my brief. Those were roadblock cases mostly, in which they said, well, because there's a high degree of regulation involving motor vehicles, this is a case where somebody just turned and walked the other way. There's possible laws that could include the use, license, equipment, and ownership of vehicles. A particular concern officers have is the possibility of drunk driving on the roads. So for those reasons, the officer does not have to say, I suspected him for a broken taillight or some specific crime. Those cases do not require any particular crime to be suspected, just some crime. Well, is that what Ray says? Ray says somewhat different, if I can continue with my time up. Ray does say something in the lead opinion about nothing to determine what, if any, these possible crimes was being or had been committed. Then concluded that the officer was operating on an unparticularized and unsubstantiated hunch. I'm not sure that the authority that I cite in my brief requires showing that, well, if he can't name the crime, then it's not particularized. Because I'm not sure that particularization has to apply to the particular crime, the specified crime, but with respect to the facts, which are suspicious of a crime. In this kind of an unusual context, because police avoidance, you don't necessarily know what the defendant is doing wrong, but you know he is doing something, and that's at least a reasonable suspicion. So those reasons we request the court to reverse order suppressing evidence and demand for further proceedings. Thank you, counsel. We'll take this matter under advisement and recess for the lunch hour.